*MEB*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

## I. INTRODUCTION

I, Donald L. Catanzarito, Special Agent with the U.S. Postal Service ("Postal Service" or "USPS"), Office of Inspector General ("OIG") in Cleveland, Ohio, being duly sworn, depose and state as follows:

### A. Affiant Training and Experience

1.     I have been a Special Agent with the USPS OIG in Cleveland since September 2006. Prior to holding this position, I was a Special Agent with the National Aeronautics and Space Administration (NASA) OIG for more than fourteen years, and before that, at the U.S. Railroad Retirement Board OIG from May 1991 to June 1992. I also served as an intelligence officer with the Defense Investigative Service from November 1983 to May 1991, and as a municipal police officer and detective with the Punxsutawney, PA Borough Police Department from June 1980 to November 1983.

2.     I graduated from Indiana University of Pennsylvania, Indiana, PA, with a bachelor's degree in Criminology. In the course of my career, I have attended a variety of criminal investigative training classes since 1980, including the Criminal Investigator Training Program at the Federal Law Enforcement Training Center, Glynco, GA, and the Pennsylvania State Police Academy, Hershey, PA.

3.     I have expertise in and have conducted numerous criminal investigations involving white collar crime, including financial crimes, procurement fraud, and computer crime, as well as other general criminal matters. I have also written and provided information for numerous search and arrest warrants at the state and federal levels.

1

B. <u>Purpose of the Affidavit</u>

This affidavit is submitted for the limited purpose of establishing probable cause that from in or around December 2011 through on or about March 6, 2014, the exact dates unknown, in the Northern District of Ohio, Eastern Division, KEVIN HOOD did knowingly and intentionally devise and intend to devise a scheme and artifice to:

> (1) to defraud and deprive the United States Postal Service of its right to the honest and faithful services of HOOD, through bribery and kickbacks and the concealment of material information related thereto, and

> (2) to defraud the United States Postal Service and other potential United States Postal Service contractors and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises,

and for the purpose of executing such scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Sections 1343 and 1346.

4. As such, this affidavit does not include every fact known to me, but rather summarizes a portion of the relevant information concerning this investigation.

## II. INFORMATION SUPPORTING A FINDING OF PROBABLE CAUSE

A. <u>Background Information</u>

5. I know the following from my own investigation, law enforcement and other business records, or from information supplied to me by other investigators or investigative support personnel whom I believe to be truthful and reliable. It is also based upon information gained from a source, Andrew Maloney, whose reliability is established separately herein.

6. At all times material to this affidavit, the Postal Service was an agency of the U.S. Government engaged in the delivery of mail throughout the world. The Postal Service spends

2

millions of dollars in procurement arrangements in the form of contracts, invoices, purchase orders, and oral agreements to deliver mail.

7.  The Postal Service operates a Vehicle Maintenance Facility (VMF), which is a garage whose principal business is the care and maintenance of all vehicles within the Postal Service. The VMF employs both government workers and contractors to maintain Postal Service vehicles.

8.  KEVIN HOOD has been employed by the Postal Service since April 25, 1998, according to Postal Service records. Postal service records also show that HOOD is the manager of the VMF located at 1801 Broadway Avenue, Cleveland, OH, 44101. As VMF manager, HOOD has the ability to award and monitor contracts on behalf of the Postal Service.

### B. HOOD Receiving Things of Value from Andrew Maloney and Andrew's Auto Service

9.  On December 13, 2013, Andrew Maloney was interviewed by your Affiant. Maloney owns Andrew's Auto Service, a towing company in Cleveland, OH that contracts with the Postal Service. Maloney provided a signed, sworn, written statement concerning the information he provided during this interview, which is summarized below.

10. In or around 2011, Maloney moved the Andrew's Auto Service garage from East Cleveland to Cleveland. He moved again in or around October 2013, to its current location in Cleveland. Postal Service VMF manager Kevin HOOD visited Maloney at his East Cleveland, OH location and made suggestions to Maloney on what he needed to do to be awarded Postal Service work. Once Maloney moved his business to Cleveland, he called on HOOD again to solicit business from the Postal Service. HOOD and Ken Robinson, a Postal Service supervisor at the VMF, visited Maloney and made suggestions on the needs of the Postal Service in order to receive work. Maloney indicated he addressed these concerns and shortly thereafter, he starting

3

receiving work to perform scheduled maintenance and repairs of Postal Service vehicles. At this time, Maloney did not have a contract and was receiving a small amount of vehicles from the Postal Service working as a vendor.

11. Maloney indicated that the work was steady, and a few months later (approximately February 2012), he received a contract from the Postal Service. The contract was for approximately $250,000 over two years and the labor rate was set at $40.00 per hour. The contract calls for Maloney's company to provide the labor to service the vehicles and the Postal Service provides all the parts.

12. When asked if Maloney had been approached by HOOD requesting money or things of value related to the Postal Service contract, Maloney admitted that HOOD approached Maloney for money when he moved from East Cleveland to Cleveland. HOOD came by and walked near the back of the garage. He grabbed a piece of cardboard and wrote out a payment schedule and dates. Maloney recalled HOOD wrote down amounts along with dates, detailing two to three payments. Maloney believed he did not keep the cardboard when he moved to his current location in Cleveland. Maloney had to make the first payment around Christmas 2011, and he had to give HOOD between $1,700 and $2,500 in cash.

13. Maloney believed he had to pay HOOD to keep the contract and the work flowing into Maloney's towing company.

14. Maloney's payments to HOOD vary, as HOOD will contact him when he wants money. HOOD will either approach Maloney at Andrew's Auto Service or at the VMF when Maloney is there to pick up or drop off a Postal Service vehicle. HOOD told Maloney he needed cash, no checks, and HOOD tells the payment amount and logistics.

15. Maloney estimated having paid HOOD approximately $15,000 to $17,000 to date. Maloney stated he recently made a $5,000 payment to HOOD. In October 2013, HOOD stopped by Andrew's Auto Service and told Maloney he would need $5,000 by November 15, 2013. HOOD said he wanted a nice Christmas and a nice vacation. On November 15, 2013, Maloney withdrew the $5,000 from his bank account and delivered it to HOOD at the VMF. Maloney placed the money, all $100 dollar bills rolled up in his hand, into HOOD's open lunch box. There was no talk of the money, and Maloney left.

16. Maloney believed her/his next payment to HOOD would be in February 2014.

17. Maloney recalled that on one occasion, he was a few days late with a payment to HOOD because he was short on cash. As a result, there was a reduction in Postal Service vehicles supplied to Andrew's Auto Service for repair and service. Once Maloney made the payment, the volume resumed.

18. Following the interview, Maloney provided your Affiant with two, $2,500 withdrawal tickets from two different business checking accounts, dated November 15, 2013. Maloney explained that these were for the $5000 payment to HOOD on November 15, 2013

19. In addition to cash, Maloney stated he has also had to make repairs to HOOD's personally owned vehicles (POVs) and that HOOD does not pay for these repairs. Maloney stated HOOD will provide the parts and Maloney has to provide the labor, free of charge. Maloney recalled one repair included replacing brakes and ball joints on HOOD's Chevy truck. Maloney stated HOOD also makes Maloney provide an invoice to HOOD which shows HOOD paying for the service. Maloney believed he has provided approximately $5,000 to $8,000 worth of free labor on HOOD's POVs.

20. On January 15, 2014, Maloney gave your Affiant invoices for service work performed for HOOD. Maloney noted that HOOD first demanded that Maloney repair his POVs just before Maloney received the service contract from the Postal Service. Maloney could not recall the specific date, but indicated he changed the oil, adjusted the brakes, and installed stabilizer link pins on HOOD's vehicle. The labor cost was approximately $100 to $150; HOOD picked up the vehicle but failed to pay the bill. According to Maloney, HOOD stated this was part of the deal in Maloney receiving Postal Service work. Maloney believed if he would have pressed HOOD for payment, it would have adversely affected his contract with the Postal Service.

21. Maloney has continued to perform repairs for HOOD, but HOOD never pays. Maloney explained that HOOD has gone so far as to require Maloney to provide a written invoice on all repairs and to show that HOOD paid cash for the repairs. Maloney stated the invoices are an accurate reflection of the services performed, but that any notation showing that HOOD paid the invoice is false. On invoice #608, Maloney believed this was a Ford Escort that belonged to HOOD's mother or mother-in-law.

22. Maloney provided fifteen invoices showing repairs from December 5, 2011 to October 29, 2013 to HOOD's POVs, summarized as follows:

| Invoice Number | Invoice Date | Invoice Amount |
|---|---|---|
| 94 | 12/05/2011 | $50.00 |
| 239 | 01/06/2012 | $419.15 |
| 563 | 04/17/2012 | $414.84 |
| 574 | 04/20/2012 | $107.75 |
| 608 | 05/01/2012 | $48.49 |
| 673 | 05/22/2012 | $134.69 |
| 697 | 05/31/2012 | $80.81 |
| 751 | 06/19/2012 | $70.04 |
| 822 | 07/13/2012 | $64.65 |
| 838 | 07/17/2012 | $32.33 |
| 887 | 07/31/2012 | $10.78 |

| 894  | 08/01/2012 | $26.93   |
| 920  | 08/09/2012 | $48.49   |
| 2414 | 08/07/2013 | $632.49  |
| 2713 | 10/29/2013 | $289.43  |

23. Andrew's Auto Service invoices to the USPS do not disclose the cash payments and free vehicle repairs that HOOD received. Andrew's Auto Service did not otherwise disclose to the USPS the things of value HOOD received.

24. Payment for services rendered to the Postal Service can take the form of a wire transaction, check, money order, rebate, credit, and cash. Payment for services rendered to the Postal Service can take the form of a wire transaction, check, money order, rebate, credit, and cash. For example, Andrew's Auto Service participates in an electronic billing process that employs an "eFleetCard," which permits electronic transfer of funds in response to contractor costs billed. Payment on the eFleetCard is made via wire transfer in interstate commerce.

25. Your Affiant has confirmed through Voyager database records that Andrew's Auto Service last received a deposit in its financial account in the Northern District of Ohio from USPS for vehicle maintenance via interstate wire transfer on or about March 1, 2014.

26. Maloney admitted he had a criminal record and was charged with federal and county narcotics related charges in 2006. Maloney stated he was doing a lot of auto repair work for drug dealers at the time. Maloney stated he was sentenced to probation and has not been in any trouble since 2006. Your Affiant reviewed the Criminal History Record Information (CHRI) and confirmed Maloney's prior conviction.

27. On February 14, 2014, Maloney reported to your Affiant that at approximately 8:45 a.m., HOOD stopped by Andrew's Auto Service. HOOD initiated a discussion with Maloney concerning the servicing of vehicles from the Parma VMF. HOOD then told Maloney

7

he would need a payment before February 25, 2014, because HOOD was taking a trip and would not return until after March 1, 2014. Maloney asked HOOD how much money he needed, and HOOD responded, "What we agreed on." Maloney claimed he asked HOOD several times how much money needed or wanted, however, HOOD never specified an amount.

28. On February 20, 2014, your Affiant provided Maloney with $500 in $100 bills. Maloney agreed to give the money to HOOD, and consented to audio and video recording of the transaction with HOOD. HOOD arrived at Andrew's Auto Service between 8:30 a.m. and 9:00 a.m. At the outset of the meeting, HOOD stated he was planning a trip to North Carolina for the Postal Service and to visit family, and that he planned to leave on February 25, 2014.

29. Maloney told HOOD he had $500, and asked HOOD, "What is the number we are looking at?" HOOD stated Maloney needed to give him "5 stacks on November 1 and March 1." Maloney indicated he understood this to mean he had to provide HOOD $5,000, on November 1st, and another $5,000, on March 1st. Maloney told HOOD he only had $500 to give HOOD and it would take him some time to get the rest of the money, but that he would get him the $4,500. Maloney then gave HOOD the $500, which was in a bank envelope. HOOD took the envelope and removed the money from the envelope, counted it out, and then threw the envelope into a garbage can. HOOD then left Maloney's office.

30. On March 5, 2014, Maloney and HOOD agreed via telephone to meet at 9 a.m. at Andrew's Auto Service so Maloney could pay HOOD the remaining $4,500.

31. On March 6, 2014, Maloney paid HOOD the remaining $4,500 in U.S. government funds in denominations of $100. HOOD placed the envelope containing the bills in his left boot. This transaction was monitored and recorded by USPS OIG Special Agents.

8

### III. CONCLUSION

32. I hereby swear that the above facts are true and correct to the best of my knowledge.

*[signature]*
Donald L. Catanzarito
Special Agent
United States Postal Service
Office of Inspector General

Sworn to before me and subscribed in my presence,

This 6th day of March 2014

Cleveland, OH

*[signature]*
Hon. Greg White
U.S. Magistrate Judge

9